# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JUDY M. ENGLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16CV475 HEA |
| ) | |
| CENTURYTEL OF MISSOURI, LLC, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim, [Doc. No. 35]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion is granted in part and denied in part.

### Facts and Background

Plaintiff's Amended Complaint alleges that this is an action brought pursuant to the Missouri Human Rights Act, Chapter 213, RSMo for age and sex discrimination, as well as retaliation. The following facts are alleged:

Plaintiff is a citizen of Missouri.

CenturyLink Sales Solutions is a Delaware Corporation with its principal place of business at 100 CenturyLink Dr., Monroe, Louisiana, 71203. Embarq Management Company is a Delaware Corporation with its principal place of business at 100 CenturyLink Dr., Monroe, Louisiana, 71203. "CenturyLink" is a

fictitious name listed with the Missouri Secretary of State. The owner is listed as CenturyTel of Missouri, LLC. The address listed is 100 CenturyLink Dr., Monroe, Louisiana, 71203. Embarq Management Company is registered with the Missouri Secretary of State. The address listed is 100 CenturyLink Dr., Monroe, Louisiana, 71203.

On January 21, 2016, Jerry Allen, CenturyLink, provided a response to Plaintiff's service letter request. Allen's response to Plaintiff's service letter request was written on CenturyLink letterhead. Allen explained in his letter that Plaintiff was "…employed by Embarq Management Company as manager Revenue Assurance". Allen further explained that Plaintiff "…when Embarq was spun off, you continued your employment with Embarq through it being acquired by CenturyTel and until your termination on December 27, 2014."

CenturyTel of Missouri is registered as a foreign corporation, with its principal place of business located at 100 CenturyLink Dr., Monroe, Louisiana, 71203, as is the parent of each of the aforementioned entities and foreign corporations. Embarq Management Company and/or CenturyTel of Missouri, either one or all of them, employed Plaintiff Judy England during all times relevant to this Complaint. Each Defendant is registered to do business in Missouri.

Defendants, any or all of them, operated a place of business at 575 Maryville Centre Drive, St. Louis, MO 63141, during all times relevant.

At all times relevant to this lawsuit, Defendants were employers within the meaning of 213.010(7) RSMo. of the MHRA because they employed more than 6 persons.

On July 30, 2015, Plaintiff timely submitted a charge of discrimination against Defendants with the Missouri Commission on Human Rights (MCHR), Charge No 5602015-01152, where she alleged Defendants unlawfully discriminated against her based-on age and sex, and retaliation.

On November 20, 2015, the MCHR issued its Notice of Right to Sue, and Plaintiff instituted this action within 90 days of her receipt of the Notice of Right to Sue.

On April 6, 2016, the case was removed from the Circuit Court of St. Louis County to Federal court.

Plaintiff was employed by Defendants from July 1997 until her employment was terminated on December 26, 2014. Plaintiff was a finance/revenue assurance manager. While Plaintiff was still employed, she was treated worse than younger employees. For example, other, younger employees were allowed to work remotely, but Plaintiff was not. Plaintiff was also denied her yearly 1.5% merit increase in salary in 2014, although younger workers received their salary increase.

While employed by Defendants, Plaintiff endured sexual harassment from her supervisor, John Raphold, who would comment on her appearance, calling her "hot" at work.

Plaintiff complained to her supervisors about the unfair, discriminatory treatment she was experiencing at work. Defendants took no action to correct the unfair discriminatory treatment.

After Plaintiffs employment was terminated, Defendants retaliated against her for her complaints by reducing her pay and giving false negative references to Plaintiffs prospective employers, making it difficult for Plaintiff to obtain new employment.

Count I of Plaintiff's Amended Complaint is styled "Violation of the OWBPA and alleges:

Plaintiff was notified in April 2014 that her entire department would be laid off. At the time of Plaintiff's termination, Plaintiff was a 55-year old woman. In her department, the majority of persons were over the age of 40.In her department, the overwhelming majority of persons were females. The lay-off had a disproportionate impact of laying off predominantly older, female workers.

On January 6, 2015, England was presented with a severance agreement that contained a Confidential Separation and Release Agreement. England's severance agreement included a Confidential Separation and Release Agreement. There was a

4

specific reference to "Exhibit B" in the separation agreement. "Exhibit B" was intentionally omitted from the separation agreement.

Plaintiff believes none of the employee's 40 years of age and over, that was laid-off, received an "Exhibit B packet." Plaintiff believes "Exhibit B" contained a list of Employees called the "Decisional Group."

The release signed by England as invalid under the OWBPA for several reasons. The release documentation contained material misrepresentations, failed to describe the affected decisional unit with particularity, failed to disclose the eligibility factors, and ignored regulatory formatting requirements with respect to disclosing the ages and job titles of the affected employees.

Defendants made material misrepresentations to the affected employees. Defendants' conduct made it unreasonably difficult for England to determine whether she might have an age discrimination claim at the time she executed the Release.

Defendants were required to provide information about the ages of both terminated and retained employees to those who are considering releasing their age claims. England is correct in stating that Exhibit B was meant to be the provision in fulfillment of this requirement.

England was not given a fair opportunity to release her age claim because the language referring to an attached Exhibit B was cut out of her Release

Agreement. England was not given an opportunity to execute a waiver knowingly and voluntarily because the waiver/release is invalid under the OWBPA.

Count II of Plaintiff's Amended Complaint is styled "Violation of the Missouri Human Rights Act-Sex Discrimination," and alleges the following:

Plaintiff is a woman, and is therefore a member of a protected class. Because of her sex, female, Plaintiff was discriminated against and suffered adverse employment action by Defendants, including but not limited to, being part of a department lay off that included mostly women, and being treated differently than men in the workplace, and being subjected to sexual harassment. Plaintiff's sex was a contributing factor in Defendant's decision to terminate her employment, for all of the above reasons. Because of the discrimination, Plaintiff has suffered damages. Defendant's conduct was outrageous because of an evil motive and reckless indifference to the rights of Plaintiff, in that Defendant intentionally terminated her employment and discriminated against Plaintiff without just cause or excuse in violation of the Missouri Human Rights Act.

Count III of the Amended Complaint is styled "Violation of the Missouri Human Rights Act-Retaliation," and alleges:

Plaintiff opposed age and sex discrimination when she complained to her supervisors that she was being treated worse than her younger coworkers, and her male coworkers. Plaintiff had a reasonable belief that she was being discriminated

against by Defendants' employees. Defendants took adverse employment action against her when they terminated her, and thereafter withheld pay from her and gave false negative references to prospective employers. Plaintiff's complaints of discrimination were a contributing factor to the adverse action taken against her. Defendants treated Plaintiff differently than other employees who did not complain about discrimination; Defendants withheld money from Plaintiff following her layoff and gave false, negative references to prospective employers. Plaintiff was damaged as a result of this retaliation. Defendants' conduct was outrageous because of an evil motive and reckless indifference to the rights of Plaintiff, in that Defendants intentionally terminated her employment without just cause or excuse because Plaintiff was exercising her rights under the Missouri Human Rights Act, and such termination was in violation of the Missouri Human Rights Act.

**Motion to Dismiss Standard**

Under Fed.R.Civ.P. 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Fed.R.Civ.P. 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citation

omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.,* 599 F.3d 856, 861 (8th Cir.2010) (quoting *Iqbal,* 556 U.S. at 678). Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4 (8th Cir.2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens,* 619 F.3d 867, 872–73 (8th Cir.2010).

## Discussion

### OWBPA CLAIMS

Defendants move to dismiss Count I because the OWBPA does not provide a separate, stand-alone cause of action.

In 1990, Congress enacted the Older Workers Benefit Protection Act (OWBPA) to "clarify the protections afforded older workers under the ADEA." *Parsons v. Pioneer Seed Hi-Bred Int'l, Inc.*, 447 F.3d 1102, 1104 (8th Cir. 2006). The OWBPA is codified at Title 29, United States Code, Section 626 *et seq.* (2016). Section 626(f) sets out statutory requirements that waivers of ADEA

claims must meet, at a minimum, to be valid and, thus, enforceable. *See* 29 U.S.C. § 626(f) (listing the mandatory statutory requirements). These requirements mandate that employers give their terminated employees, at a minimum, a certain time period to consider the ADEA claim waivers, the advice to consult with an attorney, and certain informational disclosures. *Id.* If an employer does not comply with these statutory requirements, then the waiver is not considered knowing and voluntary, which means that it does not bar the employee's *ADEA* claims. *See generally Oubre v. Entergy Operations, Inc.,* 522 U.S. 422 (1998) (holding that a nonconforming waiver does not bar an employee's *ADEA* suit). The Eighth Circuit Court of Appeals in *Parsons* stated that "[t]he requirements [of OWBPA] are strict and unqualified; if the waiver does not satisfy the statute, it is ineffective as a matter of law." *Parsons,* 447 F.3d at 1104 (citing *Oubre,* 522 U.S. at 427 ("Congress delineated these duties with precision and without qualification: An employee 'may not waive' *an ADEA claim* unless the employer complies with the statute.")).(Emphasis added).

A preliminary matter is whether Congress wrote the statutory requirements in such a manner that a court may understand their demands and strictly enforce them. As with any matter of statutory interpretation, the court turns first to the plain language of the statute. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.,* 651 F.3d 857, 862 (8th Cir. 2011) (citing to *United States v. I.L.,*

614 F.3d 817, 820 (8th Cir. 2010) (internal citation omitted) ("The Supreme Court has 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.' ")). Only "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' " *I.L.,* 614 F.3d at 820 (internal citations omitted). Thus, only if the plain language is ambiguous will the court inquire into other persuasive aids such as agency regulations and the statute's legislative history. Title 29, United States Code, Section 626(f)(1), provides in pertinent part:

> Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum-
>
> (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
>
> (B) the waiver specifically refers to rights or claims arising under [the ADEA];
>
> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
>
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
>
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
>
> (F) .... (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to-(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program ....

29 U.S.C. § 626(f)(1). Much of the statute is written in clear, plain-language. The court understands that Section 626(f)(1)(A)-(H) lists minimal requirements that Congress designated to ensure that older workers make "knowing and voluntary" waivers of their ADEA claims.

The statute provides that "the party asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary." 29 U.S.C. § 626(f)(3). S*ee Kruchowski v. Weyerhaeuser Co.,* 446 F.3d 1090, 1093 (10th Cir. 2006) ("As a preliminary matter ... [f]or claims concerning § 626(f)(1)(A)-(H), the OWBPA clearly places the burden on the party asserting a valid waiver of *rights to an age discrimination claim* to show that execution of the waiver was knowing and voluntary.").(Emphasis added).

Plaintiff alleges the waiver failed to comply with the OWBPA because it did not include Exhibit B, which provides the information from which Plaintiff could make a voluntary and knowing waiver, and was not "written in a manner calculated to be understood by" an employee. 29 U.S.C. § 626(f)(1)(A); *Id.* at 16.

Whether or not the waiver was voluntary and knowing is of no consequence in the matter before the Court. Plaintiff has not alleged a claim under the Age Discrimination in Employment Act. ("ADEA"). The Supreme Court has made it clear that the "OWBPA governs the *effect* under federal law of waivers or releases *on ADEA claims ...*" *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998) (emphasis added); *see also, id.* at 426–27 ("The statutory command is clear: An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements."); *id.* at 428 ("The statute governs the effect of the release on ADEA claims...."); *Lockheed Corp. v. Spink,* 517 U.S. 882, 894 n. 6(1996) ("The Older Workers Benefit Protection Act ... establishes requirements for the enforceability of employee waivers of ADEA claims made in exchange for early retirement benefits.").

> This language strongly indicates that the OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim. The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred. Indeed, Plaintiff has not cited a single case in which a court has held otherwise. Moreover, the legislative history of the OWBPA clearly distinguishes between bringing an age discrimination suit and a claim that the OWBPA has been violated. The Senate Report accompanying the

enactment of the OWBPA stated that waiver provisions of the OWBPA protect the rights and benefits of older workers by "ensur[ing] that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA." S.Rep. No. 101–263, at 5 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1510.

*Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1191–92 (10th Cir. 1999). "[T]he OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim. The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred." *Id.* at 1192.

Although the Eighth Circuit has not addressed the issue, every other court to consider it has held there is no independent cause of action under the OWBPA for money damages. *See Newton v. Basys Processing, Inc.*, No. 16-2662-JAR-JPO, 2017 WL 978119, at *4 (D. Kan. Mar. 14, 2017); *E.E.O.C. v. UBS Brinson, Inc.,* Nos. 02Civ.3748RMBTK, 02Civ.3745RMBTK, 2003 WL 133235, at *3 (S.D.N.Y. Jan.15, 2003) (Berman, J.) ("Virtually every court that has decided the issue of whether a violation of the OWBPA, by itself, establishes age discrimination has concluded that it does not.") and *Whitehead,* 187 F.3d 1184 (10th Cir.1999) (holding same). The *Whitehead* decision is illustrative. The plaintiffs in *Whitehead* accepted an early retirement offer from their employer in exchange for signing a release of any ADEA claims. *Whitehead,* 187 F.3d at 1186–87. In subsequent litigation, the plaintiffs asserted that the release violated the

13

OWBPA because their employer did not give them the required 45 days to decide whether to sign it. *Id.* at 1191. To remedy this violation, plaintiffs requested that the court negate the waiver and award them damages, although plaintiffs had no separate ADEA claim. *Id.* at 1191–92.

The court ruled against plaintiffs, holding that "waiver provisions [are not] swords that provide plaintiffs with an independent cause of action for affirmative relief, other than declaratory or injunctive relief to negate the validity of the waiver, as it applies to an ADEA claim." *Id.* at 1191. As support for its decision, the Tenth Circuit cited *Oubre,* in which the Supreme Court made clear that "'OWBPA governs the effect under federal law of waivers or releases on ADEA claims.' " *Id.* As the Circuit Court explained, *Oubre* strongly indicates that the OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim. The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred. *Whitehead,* 187 F.3d at 1192.

The Court is persuaded by the Tenth Circuit's reasoning in *Whitehead.* The Supreme Court's language in *Oubre* strongly suggests that an OWBPA violation does not in and of itself support an action for money damages against an employer. Plaintiff's OWBPA claim is dismissed.

**Missouri Human Rights Act Claims**

Plaintiff attempts to salvage her MHRA claims of sex discrimination and retaliation through the OWBPA. Plaintiff argues that "a release cannot bar a former employee's ADEA claims if it does not conform to the strict requirements of the OWBA, irrespective of the validity of the contract as to other claims." As Defendants correctly argue, and as discussed *supra*, the OWBPA applies only to releases *vis a vis* claims under the ADEA. Nothing contained in the OWBPA applies to, or invalidates a release as it relates to claims brought for alleged violations of the MHRA.

Plaintiff admits that she executed the release and that she received substantial compensation in exchange for the release. The release, therefore, precludes Plaintiff from bringing her claims for sex discrimination and retaliation. Her attempt to resurrect released MHRA claims through her allegations that Defendants failed to comply with the OWBPA fails.

Defendants seek sanctions against Plaintiff because they argue her claims were baseless and unsupportable. The Court's review of the pleadings before it convinces the Court that Plaintiff had a sincere belief that she could raise her claims. Sanctions are not warranted.

## Conclusion

Based upon the foregoing analysis, the Motion to Dismiss is well taken. Plaintiff's Amended Complaint fails to set forth any claims for relief.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 35], is **GRANTED.**

Dated this 28th day of July, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE