# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JUDY M. ENGLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16CV475 HEA |
| ) | |
| CENTURYTEL OF MISSOURI, LLC, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Dismiss Defendants' Counterclaims for Breach of Contract, [Doc. No. 41]. Defendants oppose the Motion. For the reasons set forth below, the Motion to dismiss is denied, the alternative motion to transfer is granted.

## Facts and Background

The relevant facts and background of Plaintiff's claims are set forth in the Court's July 28, 2017 Opinion, Memorandum and Order. Defendants' Counterclaims allege the following facts:

England started working for Embarq, a subsidiary of CenturyLink, Inc., and a sister company of CenturyTel of Missouri, LLC ("CenturyTel"), in July 1997. Most recently, England worked as a Revenue Assurance Manager in Embarq's Revenue Assurance Department.

In April 2014, Embarq announced that it was moving the Revenue Assurance Department positions that were located in St. Louis to Monroe, Louisiana. Employees were told they could relocate with their jobs, and were entitled to severance benefits if they elected not to relocate.

England chose not to relocate and on December 12, 2014, she was provided with a Confidential Separation Agreement and Release in Full of All Claims ("Release"). England was separated on December 26, 2014, and she signed the Release on January 6, 2015. In exchange for $66,496.00 in severance pay and $1,250.00 in outplacement services, England agreed to release and discharge CenturyLink, Inc. and its "affiliates (including, without limitation, EMBARQ Corporation, Qwest Communications International, Inc. and their subsidiary and affiliate companies), subsidiaries, predecessors, successors, assigns, management companies or any related organizations or entities" "of and from any and all grievances, claims, actions and lawsuits arising out of or related to [England's] employment with [Embarq] or the termination of that employment . . . ."

England agreed to release, *inter alia*, "any and all claims, grievances, actions or lawsuits in any forum, which have been, might have been, or in the future might be asserted by Employee and/or on behalf of Employee, under local, state and federal laws, administrative regulations, Executive Orders, and wage payment or equal employment opportunity legislation . . . and any and all state or common-law

claims, including whistleblower, retaliation, tort and wrongful discharge claims; contract claims, including express or implied contract and breach of the covenant of good faith and fair dealing; and claims for attorneys' fees."

Embarq and CenturyTel are both subsidiaries of CenturyLink, Inc. and thus are both released parties pursuant to the Release.

On February 18, 2016, England filed a Petition in the Circuit Court of St. Louis County, Missouri ("Original Complaint") against CenturyLink Sales Solutions, Inc. ("CenturyLink Sales Solutions"), CenturyLink Public Communications, Inc., CenturyLink Communications, LLC, Embarq, and John Doe Entity A alleging that these entities discriminated against her based on her sex and her age, and retaliated against her, all in violation of the Missouri Human Rights Act ("MHRA"), when it selected her for layoff.

England served only CenturyLink Sales Solutions with the Original Complaint. CenturyLink Sales Solutions timely removed the action to this Court on April 6, 2016.

On April 11, 2016, counsel for CenturyLink Sales Solutions spoke via telephone with England's prior counsel, Jaclyn Zimmermann of Ponder Zimmermann LLC, to alert Ms. Zimmermann to the fact that England had executed the Release, to notify her that England's claims were waived pursuant to the Release (as all the named defendants in the Original Complaint are subsidiaries

of CenturyLink, Inc. and thus are released parties pursuant to the Release), and to notify her that CenturyLink Sales Solutions intended to move to dismiss the Original Complaint pursuant to the Release and to seek sanctions if England failed to dismiss her claims with prejudice before the responsive pleading deadline.

On April 18, 2016, Ms. Zimmermann and Ponder Zimmermann LLC withdrew as Plaintiff's counsel

On May 11, 2016, CenturyLink Sales Solutions, Inc. filed a Motion to Dismiss England's Original Complaint for failure to state a claim and a Motion for Sanctions against England for filing baseless claims against it. CenturyLink Sales Solutions also filed a Counterclaim Complaint against England for breach of the Release.

After many extensions and after having retained new counsel, on August 26, 2016, England moved for leave to file a First Amended Complaint, asserting that her amended complaint would do two things: (1) "eliminate any ambiguity, whether real or perceived, as to whether or not she can successfully advance her claim of discrimination"; and (2) "voluntarily dismisses without prejudice, Defendants that were not properly served [sic] Plaintiff, thus obviating the need for further response to The Court's July 21, Show Cause Order."

The Court granted England's Motion for leave to file an Amended Complaint on October 21, 2016 and denied CenturyLink Sales Solutions' Motions to Dismiss and for Sanctions as moot.

CenturyLink Sales Solutions' Counterclaim against England remains pending.

England filed her First Amended Complaint ("Amended Complaint") on November 4, 2016. In her Amended Complaint, England asserts three counts against Embarq and CenturyTel – Count I for Violation of the OWBPA, Count II for Sex Discrimination in Violation of the Missouri Human Rights Act, and Count III for Retaliation in Violation of the Missouri Human Rights Act.

All of England's claims in the Amended Complaint – alleged violation of the OWBPA, sex discrimination under the MHRA, and retaliation under the MHRA – are federal and state law claims arising out of England's employment with Embarq, and are thus covered by the Release.

England entered into a valid Separation Agreement and Release on January 6, 2015. In the Release, England agreed to waive any and all claims, including claims under the MHRA, against Embarq and CenturyTel.

England breached the Release by filing her Original Complaint and Amended Complaint. As a direct and proximate result of England's breach, Embarq has incurred and will continue to incur substantial losses including, but not

5

limited to, attorneys' fees and costs, including interest due thereon, incurred in defending England's lawsuit and as a result of prosecuting the instant claims against England.

## Motion to Dismiss Standard

Under Fed.R.Civ.P. 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Fed.R.Civ.P. 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.,* 599 F.3d 856, 861 (8th Cir.2010) (quoting *Iqbal,* 556 U.S. at 678). Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4 (8th Cir.2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556

U.S. at 679. The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens,* 619 F.3d 867, 872–73 (8th Cir.2010).

## Discussion

Plaintiff moves to dismiss the Counterclaim arguing that it was brought in retaliation for her having filed her claims against Defendants. Plaintiff argues that she has done nothing more than attempt to exercise her protected rights, and assert claims in accordance with the same. By the same token, Defendants argue that they are setting forth their valid claims for breach of contract which occurred when Plaintiff filed her lawsuit.

A lawsuit can be the basis of a retaliation claim. *Bill Johnson's Rest., Inc. v. Nat'l Labor Relations Bd.*, 461 U.S. 731, 740 (1983). The filing of a lawsuit is unlawful if it is baseless. *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1407 (10th Cir.1992). A lawsuit is baseless if (1) "controlling federal law bars the plaintiff's right to relief," (2) "clear state law makes the case frivolous," or (3) "no reasonable jury could find in favor of the plaintiff." *Id.* at 1407. Simply filing a counterclaim, without more, cannot be the basis of a retaliation claim for it is the rare case that a conduct during litigation can be the basis for retaliation. *Equal Emp. Opportunity Comm'n. v. K & J Mgmt., Inc.*, No. 99 C 8116, 2000 WL 34248366 at *4 (N.D.Ill. June 8, 2000).

Defendants assert their counterclaims are not baseless because Plaintiff has presented nothing to show or indicate that Defendants merely filed their counterclaims *because* Plaintiff filed this suit. Indeed, Defendants filed their counterclaims to enforce what they believe is a valid waiver of the exact claims Plaintiff made in her action against them.

Federal Rule of Civil Procedure 13(a) requires a party to state a counterclaim if it arises out of the same transaction or occurrence as the opposing party's claim and does not require adding a party over whom the court does not have jurisdiction. The Eighth Circuit has cited four tests to determine if a counterclaim is compulsory. *BOKF, N.A. v. BCP Land Co., LLC*, No. 6:14–CV–03025–MDH, 2015 WL 2354386 at *2 (W.D.Mo. May 15, 2015) (citing *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir.1979) and *Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir.1990)). The "tests ask whether (1) the issues of fact and law raised by the claim and counterclaim are largely the same, (2) res judicata would bar a subsequent suit on the counterclaim, (3) substantially the same evidence supports/refutes the claim and counterclaim, and (4) there is any logical relation between the claim and counterclaim." *Id.*

Defendants' counterclaims are for Plaintiff's alleged breach of contract. Applying the tests of the Eighth Circuit, the counterclaims for breach of contract

appear to be compulsory, and therefore properly brought. *Stockdall v. TG Investments, Inc.*, 129 F. Supp. 3d 871, 877–78 (E.D. Mo. 2015).

Plaintiff alternatively argues that the counterclaims should be transferred to the District Court for the Western District of Louisiana. Defendants countered that this Court should retain them based on judicial economy since Plaintiff's claims were properly pending in this Court. Since the filing of the motion to dismiss the counterclaims, the Court has dismissed Plaintiff's claims. Thus, Defendants' judicial economy argument is moot. Defendants alternatively do not oppose the transfer. As such, the Court agrees that the counterclaims should be transferred to the Western District of Louisiana pursuant to the forum selection clause contained in the Release Agreement.

**Conclusion**

Based upon the foregoing analysis, Plaintiff's Motion to Dismiss Defendants' counterclaims is not well taken. The Counterclaims are not retaliatory and are based on valid legal arguments.

Accordingly,

**IT IS HEREBY ORDERED** that Motion to Dismiss, Defendants' Counterclaims for Breach of Contract, [Doc. No. 41], is **DENIED.**

**IT IS FURTHER ORDERED** that the counterclaims are transferred to the

United States District Court for the Western District of Louisiana.

Dated this 28th day of July, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE